IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PROFESSOR DOE,              )
                                 )
           Plaintiff,           )
                                 )
              v.                )      1:18CV726
                                 )
THE BOARD OF GOVERNORS     )
OF THE UNIVERSITY OF         )
NORTH CAROLINA, et al.,       )
                                 )
                                 )
          Defendants.       )

## ORDER,
## MEMORANDUM OPINION, AND RECCOMENDATION

This matter comes before the Court on a Motion to Dismiss [Doc. #24] filed by

Defendants The Board of Governors of the University of North Carolina, The University of

North Carolina at Chapel Hill, Carol Folt in her official capacity as Chancellor, Ann Lemon

in her official capacity as Assistant Provost for Academic Personnel, and Kenneth T. Andrews

in his official capacity as Chair of the Department of Sociology. Plaintiff's Amended

Complaint [Doc. #15] raises claims for gender discrimination in violation of Title IX of the

Education Amendments of 1972 (First Claim), procedural due process (Second Claim),

constructive discharge and free speech (Third Claim), breach of contract (Fourth Claim),

defamation and breach of confidentiality (Fifth Claim), and negligence and negligence per se

(Sixth Claim), and also includes motions for injunctive and declaratory relief, all related to a

disciplinary proceeding involving Plaintiff in his position as an assistant professor at UNC.

For the reasons that follow, the Court recommends that the Motion to Dismiss be granted as

to Plaintiff's federal claims and that the state law claims be remanded to state court.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff filed a 108-page Amended Complaint.  Because this matter is presented on a motion to dismiss, the Court sets out the contentions as alleged by Plaintiff.

Plaintiff was an assistant professor at UNC in the Department of Sociology until he left in June 2018.  (Amended Complaint ¶ 10.i.)  The claims asserted arise out of his interactions with a graduate student, identified as Jane Roe, and her complaints to UNC about Plaintiff's conduct that she believed constituted sexual harassment.  Plaintiff contends that the claims made against him were contrived due to Ms. Roe's poor academic performance (id. ¶¶ 31-37), that he had spoken with her about her ongoing poor performance in his classes, including during the spring 2015 semester (id. ¶¶ 35-36), and that as of February 2015, she was failing the spring course (id. ¶ 37).  Around that same timeframe, in March 2015, Plaintiff's supervisor, Kenneth Andrews, spoke with him about a student complaint that his office was "too tightly arranged" and that "it was sometimes uncomfortable and awkward for students to meet" with him because of the configuration, but Plaintiff contends that no other matter was discussed at that time.  (Id. ¶¶ 39, 41.)  Plaintiff re-arranged his office in response.  (Id. ¶ 43.)

As alleged in the Complaint, Ms. Roe's performance did not improve.  According to the Complaint, if she received a grade of "low pass," her third while in the University's graduate program, she would not be eligible to continue in the program.  (Id. ¶¶ 45-48.)  Plaintiff alleges that he assigned a grade of "low pass," and that after Ms. Roe received

notification of her grade, she called him and e-mailed him repeatedly, she showed up in person and pled with him to have her grade changed, she put her arms around Plaintiff's torso in tears, she followed him to the parking garage, Plaintiff drove her back to the Sociology Department, and she initially refused to get out of his car until Plaintiff raised his voice to make her leave. (Id. ¶ 51.) On the following business day, Plaintiff alleges that Ms. Roe met with an EOC Deputy Title IX Coordinator to report that Plaintiff had sexually harassed her. (Id. ¶ 53.) Plaintiff further contends that on May 14, Ms. Roe requested a formal investigation of Plaintiff for the time period "fall of 2014 to March 19, 2015," based upon allegations that he had closed door meetings (one-on-one) in which he would have her sit next to him, that on at least ten occasions he placed his hand on her inner thigh for ten seconds, that he would place his hands on her shoulders for several seconds, that he grabbed her hands and looked into her eyes, and that he would write on her assignments to meet him in his office or that he was happy to meet with her. (Id. ¶¶ 54, 57.) Plaintiff contends he had no "meaningful" notice to prepare for his interview with the Administrative Reviewer because he lacked any dates or times for the alleged offenses. (Id. ¶ 59.)

With respect to the investigation, Plaintiff alleges that the Administrative Reviewer improperly accepted testimony from other witnesses whom Ms. Roe believed could offer similar information about their experiences with Plaintiff but would not accept character evidence about Plaintiff. Plaintiff also alleges that the University's EOC failed to follow its own rules by not attempting to reach an informal resolution of the dispute. (Id. ¶¶ 64-67.)

According to the Complaint, Plaintiff was interviewed by the University's Administrative Reviewer on June 9 and 19, further met with the Reviewer several times between June 19 and June 30, and was permitted to review but not copy the Reviewer's notes. (Id. ¶ 81.) According to Plaintiff, the EOC Reviewer was biased because of her tone, because she told Plaintiff, "It's OK, you can tell me," and because of a comment she made that, "She was pretty sure that she understood this case." (Id. ¶ 82, 84.)

The Complaint alleges that thereafter, on August 20, his supervisor, Kenneth Andrews, sent an email confirming the meeting that occurred on March 24 regarding the arrangement of Plaintiff's office, and mentioned in the email, for the first time, Plaintiff's "too-familiar" touching of students. (Id. ¶ 87.) In his Complaint, Plaintiff admits that he has "had chummy and innocuous 'physical contact' with many students and colleagues in forms such as: high fives, handshakes, and arm around the shoulder, holding of a hand in an emotional crisis, or a friendly punch in the arm, or (the act at issue in this case) a closed, outer fist's tap to the outer knee of someone seated next to him." (Id. ¶ 23.) Plaintiff also concedes that "[a] few students found Professor Doe's office quarters cramped and his familiar, 'non-sexual' contact nevertheless awkward at times." (Id. at ¶ 101.iv.)

According to Plaintiff, his contacts with students were originally interpreted as nonsexual, non-aggressive, and non-predatory, but that one witness "recast" her perceptions of the touching based upon her own separate experiences and her friendship with Ms. Roe, and therefore her creditability should have been "unquestionably degraded" by the trier of

fact. (Id. ¶¶ 95-98.) This witness is referred to in the Complaint as "Jane's Friend," but is also later identified by Plaintiff as one of Plaintiff's former teaching assistants. As to this witness, Plaintiff alleges that that Jane's Friend told the Administrative Reviewer that she did not originally think that Professor Doe's interactions with her were inappropriate at the time they occurred. (Id. ¶ 97.xii.) However, she reached back out to the Administrative Reviewer to explain that she nevertheless thought "this counts as sexual harassment." (Id.) Plaintiff alleges that this witness was willing to:

> "start a war" on "gender issues" if necessary to get them "taken seriously" . . . not because Professor Doe actually sexually harassed her (as her own testimony would indeed later be that Professor Doe "never touched [her] thigh" and that she "never directly said that [she] felt uncomfortable" with his familiar chummy, non-sexual contact) but rather because she had previously been seriously sexually assaulted multiple times . . . . [and] was actively suffering from and being treated for PTSD.

(Id. ¶ 97.iii, iv.)

An EOC Report was published on August 24, with redactions made appearing to protect the identity of individuals who were interviewed. (Id. ¶¶ 89, 90.) The Complaint, apparently quoting from the EOC Report, alleges that the EOC Report concluded that that it was more likely than not that Plaintiff

> "engaged in sexual harassment of [Jane Roe] [and there is] sufficient evidence to support a pattern of behavior and propensity by [Plaintiff] to engage in conduct with female students when working side-by-side with them, particularly physical contact of various degrees which made them feel uncomfortable. **The evidence makes it more likely than not that [Jane Roe's] version of the events should be considered as true . . . ."**

(Id. ¶ 100) (emphasis in Amended Complaint). [1]

Plaintiff received a letter of reprimand on August 27 from Dean Hartlyn, which also included the content of the email sent to Plaintiff by Defendant Andrews on August 20 regarding the arrangement of Plaintiff's office and his meetings with students. (Id. ¶¶ 104-05.) Jane Roe appealed to the Student Grievance Committee (SGC) contending that Plaintiff should have been more strictly disciplined. (Id. ¶ 107.) Plaintiff completed his EOC training required by the EOC Report. (Id. ¶ 108.)

While the SGC appeal was pending, Jane's Friend (who was Plaintiff's former teaching assistant) conducted an "invitation-only meeting" on November 13, which included "multiple members of the EOC," including its then director, the purpose of which was to discuss the "'problem' of Professor Doe remaining on campus and exposed to students." (Id. ¶ 111.) The Complaint alleges that Jane's Friend "intentionally disclosed confidential and defamatorily misleading information." (Id. ¶ 112.) This was one of multiple meetings arranged by Jane's Friend which included UNC administrators and students. Demands were made by Jane's Friend that Plaintiff not teach and that he be dismissed. (Id. ¶ 113.) According to the

---

[1] According to the Complaint, on May 19, after Ms. Roe filed her administrative claim alleging sexual harassment, Mr. Roe challenged her failing grade in Plaintiff's class. In light of the EOC Report, the Grade Appeals Committee ultimately concluded that it "could not objectively determine the extent to which the cited harassment . . . made it difficult to perform at a passing level in the course." (Id. ¶ 75, 109.) Plaintiff disputes the findings and Ms. Roe's allegations. (Id. ¶¶ 76-77.)

Complaint, UNC condoned these meetings and participated in them by sending administrators who did not curtail the speech at the meetings by others. (Id. ¶ 114.)

Plaintiff alleges that SGC hearings were conducted on December 9 and 17, but raised a host of procedural irregularities or questionable testimony. (Id. ¶ 122.)[2]  On January 12, 2016, the SGC affirmed the EOC's finding that sexual harassment "has affirmatively occurred." (Id. ¶ 124.) According to the Complaint, the opinion made the following finding:

> Specifically, the Hearing Panel concluded that the Respondent engaged in unwelcome physical conduct based on sex that created a hostile, intimidating, or abusive environment for the Grievant.  The Hearing Panel determined that the Respondent placed his hand on the Grievant's thigh while they were alone

---

[2] Plaintiff contends that:  the parties had different redacted versions of the EOC Report; that neither party (nor counsel) could directly ask questions of the other; that such questions were screened by a panel of three faculty members who were not licensed members of the North Carolina Bar and who received advice from the University during the hearing (ex parte); that Ms. Roe could present all 4 of her witnesses but that only 4 of Plaintiff's 24 witnesses testified due to discouragement from the Panel due to the repetitive nature of their testimony; that hearsay was accepted; that according to Plaintiff, some witnesses testified that the EOC Administrative Reviewer failed to "adequately" establish contact with them and that their testimony was not considered in an initial report; and that the Reviewer falsely informed one witness that the she had been "nominated" by Ms. Roe and not Plaintiff and that this apparently dissuaded her from testifying in the EOC investigation.

Plaintiff also contends that during the hearing, one student witness testified to having experienced the same leg "bumping" by Plaintiff but believed it to be friendly, and that no one other than Ms. Roe testified that they had been touched on the inner thigh.  Plaintiff also contends that Ms. Roe had not "initially described the conduct . . consistently," because her prior statements did not reflect that Plaintiff touched her inner thigh.  Plaintiff also contends that Ms. Roe did not think of Plaintiff's touching as sexual for nine months, and that Jane's Friend (Plaintiff's former teaching assistant) did not think of Plaintiff's touching as sexual harassment at the time and only changed her mind after she was the victim of an unrelated assault by someone else.  Plaintiff also contends that another friend of Ms. Roe testified to a much earlier incident, years ago, involving Plaintiff touching her and believed it to constitute sexual harassment but that she also had a poor academic relationship and also mistakenly believed that Plaintiff did not ever bump male student's outer-legs.  In addition, Plaintiff notes that the EOC Report found that other testimony for Ms. Roe was "generally unclear on the sequences of events and the exchange of information and often did not speak confidently."  Plaintiff complains that witnesses for Ms. Roe disclosed breaches of UNC's Title IX policies by indicating that they knew of the investigation and its findings, or by implication of the EOC investigation, and that Ms. Roe's lawyer called him a sexual predator. (Id. ¶ 122.)  Finally, Plaintiff contends that Ms. Roe never stated particular dates or times as to the alleged harassment occurrences, and that evidence showed Ms. Roe's motive for lying and the suspicious timing of her allegations. (Id. ¶¶ 123-34.)

in his office on more than one occasion. Although the Hearing Panel did not conclude that a preponderance of the evidence showed that such conduct occurred with the frequency and duration alleged by the Grievant, the Hearing Panel found that the conduct was sufficiently severe and pervasive that it altered the conditions of the Grievant's education, thereby creating an environment that a reasonable person in similar circumstances and with similar identities would find hostile, intimidating, or abusive.

(Id. ¶ 125.) Plaintiff did not appeal. Plaintiff alleges that he believed that it was not in his best interest to appeal the EOC finding, because he would risk his career further without a likelihood of obtaining a fair trial at the next level of review. (Id. ¶ 130.) Plaintiff contend that "exhausting further administrative remedies would have been futile and inadequate" based upon the atmosphere surrounding such claims. (Id. ¶ 131.)

According to the Complaint, following the conclusion of these proceedings, "Jane's Friend and Jane Roe each actively discussed the EOC investigation and resulting SGC opinion" with other students and staff. (Id. ¶¶ 133, 139.) According to Plaintiff, Ms. Roe and her Friend were agents or employees of the University as "teaching assistants, research assistants, graduate student instructors or otherwise" when they spoke about Plaintiff's situation, and the University failed to take actions to prevent this conduct. (Id. ¶¶ 144-45.) Plaintiff alleges that by March 2016, "as a result of Jane's Friend and Jane Roe's conduct," he had been "stripped of all graduate courses he was teaching," and thereafter was removed from his work on the comprehensive exam committee, and that by Spring 2017 he was not permitted to meet with prospective graduate students. (Id. ¶¶ 132, 143.) Plaintiff continued to teach undergraduate courses, and Plaintiff alleges that a year later, on June 30, 2018, he "had

no rational choice but to submit a letter of resignation in acknowledgement that his employment had been effectively terminated." (Id. ¶¶ 153-154.)     Plaintiff then filed the present suit in state court, and the action was removed to this Court based on Plaintiff's assertion of federal claims under Title IX and § 1983.

## II.     DISCUSSION

### A.   Standard for Motion to Dismiss

A plaintiff fails to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." Twombly, 550 U.S. 544, 555, 570 (2007).

### B.  Title IX Discrimination

Plaintiff's First Claim, entitled "Title IX Violation for Gender Discrimination," alleges that the University is "subject to requirements of Title IX," (Amended Complaint ¶ 163), that under Title IX gender discrimination is prohibited in education (id. ¶ 164), and that as an employee Plaintiff is entitled to Title IX protections (id. ¶ 165). Defendants moved to dismiss

this first claim for failure to state a claim for discrimination under Title IX. Title IX states in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a) (2012).

In this case, Plaintiff contends that throughout the EOC investigation Jane's Friend "bore an extreme gender bias against men," that Plaintiff hypothesizes infected the entire proceeding, and that without this bias Ms. Roe's likelihood of success "would have been severely lessened." (Id. ¶¶ 168-169, 171, 172.) According to Plaintiff, therefore, the EOC Administrative Reviewer was "equally or similarly biased against men" accused of sexual assault, because she failed to mention these "limitations" in Jane's Friend's testimony and as a result failed to "competently and equitably" consider these limitations on the credibility of the evidence against Plaintiff. (Id. ¶ 173.) Plaintiff speculates that the reviewing SGC Panel was "equally or similarly biased" against men, and notes that the University was under immense pressure to be biased against men in light of campus wide pressure, statements by University officials, a Department of Education investigation of the University's EOC office, and national news coverage of the issue of sexual harassment by men. (Id. ¶ 175.)

"Because Title IX, which prohibits sex discrimination in education, was enacted to supplement the Civil Rights Act of 1964, courts have interpreted it by looking to the case law developed under Titles VI and VII." Haley v. Va. Commonwealth Univ., 948 F. Supp. 573,

578 (E.D. Va. 1996) (citing Yusuf v. Vassar College, 35 F.3d 709, 714 (2nd Cir.1994)). In the present case, both parties agree that to state a Title IX discrimination claim Plaintiff must show that: (1) he belongs to a protected class, (2) he suffered an unfavorable action, and (3) but for his membership in the class, the adverse action would not have occurred. Haley, 948 F. Supp. at 578 (citing Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th Cir. 1982)). The last element requires a showing of discriminatory intent. Id. A plaintiff may ultimately establish such a claim by pointing to direct proof of discriminatory intent or by proceeding indirectly under the burden-shifting scheme set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Here, Plaintiff contends that as a male he was in a protected class, that he suffered an unfavorable action when he was found guilty of harassment and directed to participate in a one-day training program, and that all of this was caused by the gender bias introduced by the testimony and personal history of Jane's Friend. Plaintiff contends that the testimony of Jane's Friend made Jane Roe appear more credible and was vital to Ms. Roe's case. Plaintiff also contends that the EOC investigator knew of and failed to disclose the Friend's gender bias. (Pl. Resp. Br. [Doc. #30] at 8-9.) Thus, Plaintiff believes that by permitting the testimony of Jane's Friend, the entire EEOC proceedings were corrupted in violation of Title IX and he was treated less favorably than Ms. Roe, the administrative complainant. (Id. at 8, n.13.)

Plaintiff has come forward with no case law supporting such a legal theory. See Painter v. Doe, 3:15cv-369-MOC-DOC, 2016 WL 4644495, at *5 (W.D.N.C. Sept. 6, 2006) ("Read in

a light most favorable to plaintiff, he only claims that Defendant Doe was treated more favorably than he was because she was a female and that certain University Defendants were biased. Such contentions of gender bias are not sufficient to advance a claim of gender bias as those contentions are merely conclusory. Additionally, plaintiff makes no factual allegations the University Defendants treated him different than females accused of committing non-consensual sexual acts and that such disparate treatment is based on gender bias.") Plaintiff has not alleged that he was treated differently than female professors similarly accused of harassment, nor has he presented anything more than conclusory allegations to support a claim based on disparate treatment.

It appears that Plaintiff may instead be attempting to allege that the University violated Title IX by conducting an investigation that led to an erroneous outcome, based on the line of cases holding that "'Title IX bars the imposition of school discipline where gender is a motivating factor in the decision to discipline.'" Biggs v. Edgecombe Cnty Pub. Sch. Bd. of Educ., 4:16-CV-271-D, 2018 WL 4471742, at *4, (E.D.N.C. September 18, 2018) (quoting Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)). "In an erroneous outcome case, 'the claim is that the plaintiff was innocent and wrongly found to have committed an offense' on the basis of gender bias." Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 765 (D. Md. 2015) (internal citations omitted) (quoting Yusuf, 35 F.3d at 715)). To state a claim for erroneous outcome discrimination, a plaintiff must allege:

> (1) a procedurally or otherwise flawed proceeding; (2) that has led to an adverse and erroneous outcome; and (3) particular circumstances that gender bias was a motivating factor behind the erroneous finding.

Id. at 766 (D. Md. 2015) (internal quotations omitted); see Doe v. Washington & Lee Univ., No. 6:14-CV-00052, 2015 WL 4647996, at *9 (W.D. Va. Aug. 5, 2015). To show that gender bias was a motivating factor underlying the erroneous determination, "a plaintiff must do more than merely rely on a conclusory allegation of gender discrimination." Doe v. Salisbury Univ, 123 F. Supp. 3d at 766 (internal citation omitted.) Rather, "'[s]ufficiently particularized allegations of gender discrimination might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" Id. at 766 (quoting Yusuf, 35 F.3d at 715).

Here, as discussed supra, Plaintiff's claim is premised upon levels of inferences and speculations and assumptions all drawn from what Plaintiff contends is a witness/friend who testified for Ms. Roe. Specifically, Plaintiff alleges that Jane's Friend, who was Plaintiff's former teaching assistant, had experienced an unrelated sexual assault, resulting in her being gender biased against Plaintiff (and all other men) in claims of sexual harassment. However, a bias in an alleged victim or witness testifying at a hearing is not equivalent to decision makers having the same view, and is far from alleging that gender bias was a motivating factor in a disciplinary decision. Indeed, it is clear from the allegations that the Administrative Reviewer and the SGC Panel knew that Jane's Friend did not view her interactions with Plaintiff and his

13

informal touching as inappropriate at the time they occurred, but that in hindsight she had changed her views. Plaintiff does not allege any facts or statistics to support a claim that the Administrative Reviewer or SGC Panel were motivated by gender bias. Alleging that his former teaching assistant, acting as a witness against him, was biased against men, is insufficient to state a Title IX violation for gender discrimination.

In addition, to the extent Plaintiff is specifically challenging the existence of a procedurally or otherwise flawed proceeding, Plaintiff admits that he did not appeal the administrative determinations or otherwise raise the alleged flaws in the available appeals process. It is not clear how Plaintiff could raise a claim based on procedural flaws in an administrative proceeding when he did not appeal or otherwise obtain a final determination in that proceeding. The Court also notes that Plaintiff's Response Brief appears to change course from the pleadings, and now frames and defends Claim 1 as if it had brought asserting the Fourteenth Amendment's protections against substantive due process. In his Response Brief [Doc. #30], Plaintiff titles his argument in support of this claim, "Defendants committed substantive due process violations against Plaintiff (a man) when the EOC investigator concealed Jane's Friend's extreme gender bias ('natural suspicion of men')." Plaintiff likewise concludes his argument maintaining that he "adequately pled substantive due process violations via Title IX gender discrimination." (Pl. Resp. Br. at 10.) However, as discussed below, Plaintiff did not allege a substantive due process claim in his Complaint and has failed to allege facts to support such a claim.

For all of these reasons, Plaintiff has failed to allege an actionable Title IX claim in this case.

C.   42 U.S.C. § 1983

The Amended Complaint also asserts claims under 42 U.S.C. § 1983 for an alleged violation of Plaintiff's procedural due process and free speech protections (Claims 2 and 3).

To state a § 1983 claim, a plaintiff must "aver that a person acting under color of state laws deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009).  Plaintiff names arms of the state and officials acting in their official capacities as defendants.  However, neither the state nor a state official in their official capacity are proper party defendants in a § 1983 suit seeking damages.  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).  Therefore, to the extent Plaintiff's suit requests damages for a constitutional violation, Plaintiff may not assert the claim under § 1983.  However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  Will, 491 U.S. at 71 n.10.  As such, the only potential § 1983 claims in this case are Plaintiff's claims for prospective relief based on his alleged Procedural Due Process violation and First Amendment violation, discussed below.

1.   Procedural Due Process

To state a procedural due process claim, a plaintiff must allege that the defendant

deprived him of a protected liberty or property interest without due process of law, which generally requires some sort of notice and opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). In evaluating a plaintiff's procedural due process claim, a court "must consult the entire panoply of predeprivation and post deprivation process provided by the state." Fields v. Durham, 909 F.2d 94, 97 (4th Cir. 1990) (citing Zinermon v. Burch, 494 U.S. 113, 126 (1990)). "[T]o state a claim for failure to provide [procedural] due process, a plaintiff must have taken advantage of the processes that are available to him" unless those processes are "patently inadequate." Manion v. N.C. Med. Bd., 693 F. App'x 178, 181 (4th Cir. 2017). Thus, "no § 1983 procedural due process violation exists when a party fails to exhaust both administrative and state court remedies that the government affords to them." Rockville Cars, LLC v. City of Rockville, Maryland, 891 F.3d 141, 148–49 (4th Cir. 2018). "This is so because a due process violation is not complete when the asserted deprivation occurs; rather it is only complete when the government fails to provide due process. Accordingly, where there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." Ashley v. N.L.R.B., 255 F. App'x 707, 710 (4th Cir. 2007).

In the present case, as noted by Defendants, the Board of Governors has exclusive jurisdiction over faculty employment matters. See N.C. Gen. Stat. § 116-11. The Board had delegated its jurisdiction to various committees, but the Board retains appellate level review. In addition, further appeal is to North Carolina Superior Court under the Administrative

Procedures Act. See N.C. Gen. Stat. § 150B-1(f). Professors may file grievances or challenge adverse employment actions using this process, with appeal to the Board and ultimately to state court. In the present case, according to the Amended Complaint, Plaintiff failed to exhaust his available remedies prior to commencing this action. (Amended Complaint ¶¶ 107, 130.) Plaintiff admits that he did not appeal the SGC determination to the Board or to state court, nor did he grieve any other issue, including being stripped of graduate courses or removed from the comprehensive exam committee, before the Faculty Grievance Committee with appeal to the Board. Plaintiff contends that exhaustion of remedies in not required when the remedies available are inadequate and futile, but Plaintiff does not plead any factual content that would support this contention. Plaintiff alleges in his Amended Complaint that appealing the decision would have been futile due to the pressure that surrounded the school from students. However, this alleged pressure on the University does not rise to the level of futility. Moreover, the appeal process in place provided for an appeal to the state court system, entirely outside any alleged University pressure, and Plaintiff elected not to take advantage of that available appeal. Plaintiff also argues that because there were already two arbitrary decisions, an appeal to the Board would have been futile. This is mere prediction, and "futility cannot be established by the plaintiffs' prediction or anticipation that the University would again rule adversely to the plaintiffs' interests." Frazier v. N.C. Cent. Univ., 244 N.C. App. 37, 52-53, 779 S.E.2d 515, 526 (2015) (internal quotations and modifications omitted). The appeals process specifically allows an avenue to raise and correct errors by the lower tribunal, and the

fact that the lower decisions were alleged to be erroneous does not render potential appeals futile. In addition, as noted above, even if the Board of Governors ruled against Plaintiff, the available appeal options included appeal beyond the Board to the state courts, which Plaintiff elected not to pursue. As alleged in the Complaint, multiple administrative and judicial procedures were in place to guard against an improper determination or unnecessary delay, Plaintiff chose not to appeal, and therefore Plaintiff has failed as a matter of law to plead a viable procedural due process violation.

Additionally, the Court notes that in his briefing, Plaintiff attempts to raise a substantive due process violation, contending that substantive due process claims are not subject to the same exhaustion of administrative remedies requirements as procedural due process claims. See Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs., 174 N.C. App. 266, 272, 620 S.E.2d 873, 879 (2005). However, these substantive due process claims were not raised in Plaintiff's amended complaint. Lilly v. Carter, No. 1:16CV400, 2017 WL 3017704, at *1 n.1 (M.D.N.C. July 14, 2017) (disregarding new claims in plaintiff's response brief because a brief is not a pleading under Rule 7(a)). Additionally, this Court does not see any pleaded facts to rise to the level of a plausible inference of "egregious, arbitrary governmental conduct" that "shocks the conscience" as substantive due process claims require. Young v. City of Mount Rainier, 238 F.3d 567, 574 (4th Cir. 2001); Painter v. Doe, 2016 WL 4644495 at *4; Manion, 693 F. App'x at 181 ("To establish a substantive due process violation, Manion must demonstrate that Defendants' conduct was so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience." (internal quotation omitted)).

### 2. Free Speech Claim

Plaintiff alleges in his Third Claim that Defendants, each acting in their official capacities, "did deliberately make [Plaintiff's] working conditions intolerable and thereby force him to resign and not renew his contract by punishing and reprimanding him far beyond the scope of the EOC and SGC opinions." (Amended Complaint ¶196.) Plaintiff maintains that "as of June 30, 2018 [he] had been constructively discharged and resigned only as a matter of course" (id. ¶197) and that his exercise of his First Amendment constitutional right to free speech to profess his innocence was a motivating grounds for the Defendants' actions to constructively discharge him (id. ¶¶197-203).

To the extent Plaintiff is asserting a First Amendment claim, the Complaint is unclear as to the basis for the alleged violation of Plaintiff's free speech rights. Courts have generally held that to allege a free speech claim, the plaintiff must allege that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000). Here, Plaintiff alleges that he continued to deny the allegations of sexual harassment. Plaintiff also alleges that he was not allowed to talk to prospective students, was not allowed to teach graduate level courses, and was removed from the exam committee. However, Plaintiff alleges no facts that establish a link between his speech of denying the allegations and the adverse actions. There

is simply no plausible allegation that Defendants retaliated against Plaintiff based on Plaintiff's continued proclamations of innocence.

Moreover, Plaintiff's allegations do not plausibly allege that a constructive discharge occurred. In the context of the ADA, the Fourth Circuit has said, "To prove constructive discharge, a plaintiff must at the outset show that his employer deliberately made his working conditions intolerable in an effort to induce him to quit. Plaintiff must therefore demonstrate: (1) that the employer's actions were deliberate, and (2) that working conditions were intolerable." Heiko v. Colombo Sav. Bank, 434 F.3d 249, 262 (4th Cir. 2006) (internal citations omitted.) Here Plaintiff was removed of teaching and committee privileges in 2016 and early 2017 and resigned in 2018. This does not lead to a plausible inference that the conditions were intolerable or that Defendants acted in an effort to induce him to quit.

In conclusion, because there are not facts pled to lead to a reasonable inference of an initial or ongoing First Amendment violation, Defendant's Motion to Dismiss should be granted as to the First Amendment claim in Claim 3.

3. Plaintiff's Remaining State Law Claims

Plaintiff's Amended Complaint also sets out various state law claims, including defamation and breach of confidentiality, negligence, breach of contract, and state constitutional claims. Plaintiff also seeks removal of information from his personnel file under state law. Defendants assert various state law defenses to these claims. Given the determination that Plaintiff has failed to state a claim for a federal statutory or constitutional

violation, there is no reason for this Court to undertake analysis of the state law claims and defenses. Here, the state-law based causes of action are best resolved in state court since no federal law claims remain. Therefore, upon dismissal of the federal claims, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3). Given that this case was removed from state court, the case should be remanded to state court with respect to the remaining state claims.[3]

Finally, the Court notes that Plaintiff previously filed a Consent Motion for Leave to file a brief in excess of the page limitation. The Court has considered the Response Brief as filed, and this Motion will therefore be granted.

III. CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Leave [Doc. #29] is GRANTED, and the Court has considered the Response Brief as filed.

---

[3] The Court notes that Plaintiff asserts in the Complaint that his claims are not brought as claims for judicial review of an administrative decision, but that "if this Court finds it necessary to so construe" the claims as petitions for judicial review under N.C. Gen. Stat. § 150B-45(a), then for those claims Plaintiff "brings said claim(s) as Petitions for Judicial Review" either timely under § 150B-45(a) or as untimely claims with good cause under § 150B-45(b). (Amended Complaint ¶ 10.iii.) As discussed above, this review was available to Plaintiff but was not previously exhausted. To the extent he now seeks judicial review of an administrative determination under North Carolina statutory provisions, those claims are best addressed by the state court.

IT IS RECOMMENDED that the Defendants' Motion to Dismiss [Doc. #24] be granted as to Plaintiffs' federal Title IX and § 1983 claims (Claims 1, 2, and 3), and that the remaining state law claims be remanded to state court.

This, the 30th day of September, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge